**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Wilson T.,

Petitioner,

v.

Todd Blanche, et al.,

Respondents.

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Civil File No. 26-04331 (MJD/DLM)

---

Nicholas Ratkowski, Ratkowski Law PLLC, Counsel for Petitioner.

David W. Fuller, Derek Ganzhorn, Assistant United States Attorneys, Counsel for Federal Respondents.

---

This matter is before the Court on Petitioner Wilson T.'s Second Petition for Writ of Habeas Corpus ("Pet."). Petitioner claims he was re-detained after being granted parole without his release being revoked. (Docs. 1, 9.)

Based on the following discussion, the Court orders Petitioner's immediate release.

# I. FACTS[1]

## A. Background Facts and Resolution of Petitioner's First Habeas Petition

The following facts are taken from the Report and Recommendation on Petitioner's first motion for habeas corpus. Wilson T. v. Todd Blanche, Case No. 26-cv-2981(JWB/LIB), Docket No. 20 (D. Minn. July 30, 2026), adopted in part, Doc. 25 (D. Minn. Aug. 20, 2026).

> Petitioner is a native and citizen of Kenya and lawful permanent resident of the United States. Petitioner was admitted to the United States in New York, New York, on or about November 25, 2005, as a B-2 visitor, with authorization to remain in the United States for a temporary period not to exceed May 24, 2006. On or about April 15, 2014, Petitioner was granted adjustment of status to that of Lawful Permanent Resident.
>
> On February 4, 2016, Petitioner was convicted in Hennepin County for Fourth Degree Criminal Sexual Conduct, victim mental impaired/helpless, in violation of Minn. Stat. § 609.345. On August 16, 2016, Department of Homeland Security (hereafter "DHS") initiated removal proceedings against Petitioner by filing and serving a Notice to Appear, Form I-862, alleging Petitioner's February 4, 2016, conviction constituted an aggravated felony under § 1227(a)(2)(A)(i). On December 9, 2016, an Immigration Judge sustained the charge and ordered Petitioner removed to Kenya.

---

[1] Undisputed facts from the Petition are deemed admitted. See Paula G. v. Bondi, No. 26-CV-410 (JMB/DLM), 2026 WL 146003, at *1 n.2 (D. Minn. Jan. 20, 2026).

> [After waiting for the Supreme Court to decide Sessions v. Dimaya, 458 U.S. 148 (2018),] . . . [o]n July 17, 2018, the BIA terminated Petitioner's removal proceedings.
>
> On December 18, 2022, Petitioner was arrested for Third Degree Driving While Intoxicated . . . and Careless Driving. . . . On May 14, 2024, Petitioner was convicted of Careless Driving.
>
> On June 7, 2025, the Golden Valley Police Department arrested Petitioner for Third Degree Test Refusal. . . . This charge remains pending.
>
> . . .
>
> On August 28, 2025, Petitioner . . . was . . . arrested [because] he was "in violation of immigration law."
>
> . . .
>
> On September 22, 2025, an Immigration Judge sustained the charge and ordered Petitioner removed to Kenya. On October 10, 2025, Petitioner appealed his removal to the BIA. This appeal remains pending.

Id. at 1-4 (citations omitted).

On August 20, 2026, the Honorable Jerry W. Blackwell held that Petitioner's arrest had been unlawful and ordered Petitioner immediately released from custody. Id. Docket No. 25, slip op. at 3-5. Judge Blackwell's order also stated the following: "Nothing in this Order precludes Respondents from later arresting or detaining Petitioner pursuant to lawful authority and in compliance with applicable statutory and regulatory requirements." Id. at 4 ¶ 5.

Petitioner was released on his own recognizance on August 21, 2026 with typical conditions of staying law-abiding and attending ICE hearings, etc. (Docs.

8-1 (Form I-213) at 3; 9-1.) His Order of Release on Recognizance ("OREC") states that he was being releases "[i]n accordance with section 236 of the Immigration and Nationality Act ("INA") and the applicable provisions of Title 8 of the [C.F.R.] . . . on your own recognizance provided you comply with the following conditions." (Doc. 9-1 at 1.) 8 U.S.C. section 1226(a) codifies section 236 of the INA. Roberto B.Q. v. Lyons, No. 26-CV-2656 (PJS/SGE), 2026 WL 3072751, at *1 (D. Minn. June 10, 2026).

**B. Petitioner's Second ICE Arrest**

On September 30, 2026, 39 days after Judge Blackwell entered his order, ICE agents re-arrested Petitioner. (Pet. ¶ 2.) Petitioner had not been charged with a new offense, was not served written notice revoking his release, and has not been offered the opportunity to challenge revocation of his release and have an individual custody determination.[2] (Id.) At the time of Petitioner's arrest, an

---

[2] Respondents asserted that Petitioner would have the opportunity to challenge revocation of his release at an October 20, 2026 Immigration Hearing. (Doc. 7 at 4.) However, Petitioner states that as of 1:07 p.m. on the 20th, the date he filed his reply, no hearing had been scheduled. (Doc. 9 at 6.) Petitioner's Counsel stated that if a hearing is scheduled before the Court rules on the petition, he will advise the Court. (Id.) Counsel has not advised the Court that an immigration hearing has been scheduled. Accordingly, the Court finds that no

ICE supervisor informed Petitioner that he was being re-arrested "because he had a serious criminal conviction and ICE wanted him back in their custody." (Id. ¶ 3.) Although there is some dispute regarding whether Petitioner was served the I-200 arrest warrant ("I-200") when he was arrested, he admits to seeing something with a time stamp of 10:41 a.m., even though he was not given a copy. Respondents not only filed the September 30, 2026 I-200, they also filed a Form I-286 Notice of Custody Determination, dated September 30 ("I-286"). (Docs. 8-2; 8-4.) The I-286 states that Petitioner will be detained pending final resolution of his immigration case. (Doc. 8-4.) Petitioner is in ICE custody in the Sherburne County Jail. (Pet. ¶ 18.)

On October 7, 2026, Petitioner filed the instant "Renewed Verified Petition for Writ of Habeas Corpus." Petitioner states that he filed the instant petition to challenge "detention by the same Respondents, arising from the same custodial relationship this Court adjudicated, and because the lawfulness of the re-arrest turns in part on paragraph 5 of [Judge Blackwell's] August 20, 2026 Order." (Id. ¶ 11.)

---

immigration hearing has yet been scheduled and therefore, the instant petition is Petitioner's only opportunity so far to challenge the revocation.

## II. DISCUSSION

### A. Jurisdiction

A writ of habeas corpus may be granted to a petitioner who demonstrates he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3); Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004). District courts have jurisdiction to hear habeas challenges to immigration-related detention. Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

It is well established that certain constitutional protections available to persons inside the United States are unavailable to noncitizens outside of our geographic borders. But once a noncitizen enters the country, the legal circumstance changes, for the Due Process Clause applies to all "persons" within the United States, including noncitizens, whether their presence here is "lawful, unlawful, temporary, or permanent." Id. at 693 (citations omitted). Petitioner must prove unlawful detention by a preponderance of the evidence. See Belsai D.S. v. Bondi, 810 F. Supp. 3d 1016, 1020 (D. Minn. 2025) (citations omitted).

### B. The Instant Petition

Petitioner proffers constitutional, statutory, and regulatory arguments related to his re-arrest and detention and asserts that his re-arrest violates Judge

Blackwell's order. (Pet. ¶¶ 55-72.) The Court need only address one dispositive argument to rule on the petition. See Faysal N. v. Noem, 825 F. Supp. 3d 844, 849 n.3 (D. Minn. Jan. 6, 2026).

Here, Petitioner was arrested on an I-200 warrant issued on September 30, 2026. (Doc. 8-2 ("I-200").) Accordingly, the Parties agree that Petitioner is being detained pursuant to 8 U.S.C. § 1226(a). 8 C.F.R. section 236 contains the regulations that implement § 1226(a). Petitioner argues that his detention violates § 236.1(c)(9).

**1. Neither the I-200 nor the Revocation Document Revoked Petitioner's Release**

Release on recognizance is the "conditional parole" authorized by § 1226(a)(2)(B). Roberto B.Q., 2026 WL 3072751, at *1; Kevin J.R.M. v. Blanche, No. 26-CV-3122 (KMM/JFD), 2026 WL 2230647, at *4 (D. Minn. July 17, 2026) ("Other courts have recognized that an order of release on recognizance is a form of conditional parole from detention upon a charge of removability, authorized under section 1226.") (cleaned up) (gathering cases), R&R adopted sub nom. Kavin J.R.M. v. Blanche, 2026 WL 2227793 (D. Minn. Aug. 3, 2026).

Under § 1226(a), any arrest must be on a warrant and release on bond or on parole is permitted. ICE can revoke the parole of a noncitizen on parole

pursuant to § 1226(a), "rearrest the [noncitizen] under the original warrant, and detain [him]." § 1226(b). Section 236.1(c)(9) gives the government "immense discretion" to revoke an OREC, "[b]ut that discretion is cabined by two conditions: (1) the discretion must be exercised to revoke the OREC; and (2) the discretion must be exercised by one of the officials listed in 8 C.F.R. § 236.1(c)(9)." Yandri F. E. v. Blanche, No. 26-CV-3835 (LMP/DTS), 2026 WL 2676764, at *2 (D. Minn. Sept. 11, 2026) (citing Sandhu v. Mullin, No. 7:26CV5009, 2026 WL 1146643, at *4 (D. Neb. Apr. 28, 2026)).

Only the following people have the discretion to revoke an OREC: "the district director, acting district director, deputy district director, assistant district director for investigations, assistant district director for detention and deportation, or officer in charge." 8 C.F.R. § 236.1(c)(9). The rule is clear: discretion under § 236(c) must be exercised by one of the listed individuals. Israel G.M. v. Venturella, 26-cv-3643, Docket No. 10, slip op. at 11 (D. Minn. Oct. 6, 2026); Yandri, 2026 WL 2676764, at *3.

Here, ICE did not revoke Petitioner's OREC. The only ICE official named in the I-200 warrant is Supervising DDO Langworthy. A "Supervisory Detention and Deportation Officer, is not among the people given the authority to revoke

an OREC under 8 C.F.R. § 236.1(c)(9)." Yandri, 2026 WL 2676764, at *3 (quoting Mejia Diaz v. Noem, No. 3:25-cv-960-CCB-SJF, 2025 WL 3640419, at *8 (N.D. Ind. Dec. 16, 2025)) (cleaned up). There is no delegation from an authorized person to DDO Langworthy. "Agencies must adhere to their own regulations." Kevin J.R.M., 2026 WL 2230647, at *5 (citing Emilio S.R.G. v. Mullin, No. 26-CV-2189 (KMM/DLM), 2026 WL 1810416, at *2 (D. Minn. June 24, 2026) (citing United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 265–68 (1954)). ICE did not do so here. For this reason, the warrant did not revoke Petitioner's release.

More importantly, the OREC was never canceled. (Doc. 9-1 at 1.) The single-page OREC has checkboxes at the bottom where an ICE official can state the reason for canceling release: failure to comply with conditions of release or that the noncitizen was taken into custody for removal. (Id.) Neither box is checked here and no ICE official signed the cancellation. (Id.) The OREC is, thus, not canceled. See Yandri, 2026 WL 2676764, at *2 (quoting Sandhu, 2026 WL 1146643, at *4); Roberto B.Q., 2026WL 3072751, at *2.

Even the I-213 appears to treat Petitioner's arrest as a new arrest, not a revocation. (See I-213 (stating that Petitioner's immigration record was "NEGATIVE," despite his previous arrest and OREC).) The document certainly

does not mention a revocation. Accordingly, there was no revocation because no ICE official could have exercised discretion over a release they did not know about. Kevin J.R.M., 2026 WL 223067, at *5; Yandri, 2026 WL 2676764, at *2 (" It beggars belief that someone exercised 'discretion' to revoke Yandri's OREC when the record reflects that no one involved in Yandri's arrest or detention even knew that the OREC existed.") (citing Kevin J. R. M., 2026 WL 2230647, at *5).

Here, ICE knew of Petitioner's OREC, but still did not attempt to revoke it, at least not that is supported by the record. This is troubling, especially considering that Respondents were ordered to certify "the true cause and proper duration of Petitioner's confinement," including "any documentation related to that release that was ordered by Judge Blackwell in August 2026," which should have prompted Respondents to explain the deficiencies just discussed. (Doc. 5 ¶ 1.)

Based on the above, the Court holds that Petitioner's EROC was not properly—or ever—revoked.

**2. The I-200 did not Revoke Petitioner's Release**

Although Respondents assert that Petitioner was properly arrested on the I-200 (Doc. 7 at 3), that is not the case. A person is taken into custody "on a

warrant." 8 U.S.C. § 1226(a). However, a person once released under § 1226(a), like Petitioner here, can only be re-detained upon revocation of the release and re-arrest. § 1226(b). If a simple I-200 warrant could revoke release, "subsection (b) [listing immigration officers authorized to issue & serve arrest warrants] and § 236.1(c)(9) would serve no purpose. ICE could skip revocation in every case by printing a new Form I-200, which any SDDO may sign." (Doc. 9 at 12 (citation omitted).) "Courts have thrown cold water on the suggestion that an I-200 arrest warrant, standing alone, serves as a valid method of revocation under 8 C.F.R. § 236.1(c)(9)." (Id. at 12-13 (quoting Yandri, 2026 WL 2676764, at *2 (collecting cases)).) A warrant explains whether there was probable cause to arrest, not whether an authorized ICE official had revoked release. See Israel G. M., Doc. 10 at 11.

Here, Petitioner does not argue that Respondents may never return him to custody. However, Petitioner, and the Court, require Respondents to comply with § 236.1(c)(9) if they do so.

### 3. The I-286 did not Revoke Petitioner's Release

Respondents argue that the I-286 "satisfied the requirements of 8 C.F.R. § 236.1(c)." (Doc. 7 at 3.) They assert that ICE provided a Notice of Custody

Determination Form I-286 issued by a Supervisory Detention and Deportation Officer, and served upon Petitioner at the time of his custody. (Id.)

An I-286 is the Notice of Custody Determination that an immigration official may issue "at the time of issuance of the notice to appear or at any time thereafter." 8 C.F.R. § 236.1(g)(1). It is a notice of initial custody determination (i.e., the determination from which a noncitizen may seek review under § 236.1(d)(1)). This form is not even mentioned or alluded to in § 236.1(c)(9), the regulation that controls Petitioner's situation, and says nothing about revocation.

An I-286 form does not revoke a prior custody decision and does not terminate Petitioner's prior release. This is especially true here when the I-286 does not purport to revoke release, mention Petitioner's previous release, or state any reason for revoking release. All the form provides are checkboxes so ICE can denote whether Petitioner was (1) detained by DHS or (2) released and any particulars related to release. (Doc. 8-4.) Moreover, the I-286 was signed by DDO Langworthy who, as previously discussed, is not an official authorized to revoke a release. See § 236.1(c)(9).

## III. REMEDY

"Habeas is at its core a remedy for unlawful executive detention," and "[t]he typical remedy for such detention is, of course, release." Munaf v. Geren, 553 U.S. 674, 693 (2008). Petitioner's OREC remains operative because it has never been properly revoked. Accordingly, release on the same conditions contained in the OREC is the appropriate remedy. See Roberto B.Q., 2026 WL 3072751, at *2; Yandri, 2026 WL 2676764, at *3; Israel G.M., Doc. 10 at 13.

## IV. ORDER

Based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Petitioner's Petition for Writ of Habeas Corpus **[Doc. 1]** is **GRANTED as follows:**

1. Respondents are ordered to arrange for the **immediate** release of Petitioner into Minnesota at a safe time and in a safe place that is communicated at least two (2) hours in advance to Petitioner's counsel;

2. Respondents are ordered to immediately return all Petitioner's personal items that were taken from him when he was detained in substantially the same condition as when the items were taken during his arrest;

3. Petitioner shall be released under the same conditions of his order of release on recognizance;

4. During the pendency of Petitioner's removal proceedings, Respondents may not return him to custody on the basis of the August 21, 2026 release or its conditions unless

(a) an official authorized by 8 C.F.R. § 236.1(c)(9) has first properly revoked the release in writing, stating the ground, with service on Petitioner and his counsel, and

(b) Petitioner has been afforded a hearing before an Immigration Judge, held before re-detention or, if an authorized official finds exigent circumstances, promptly after it, at which Respondents bear the burden of establishing by clear and convincing evidence that Petitioner is a flight risk or a danger to the community;[3]

5. Respondents are ordered to confirm with the Court Petitioner's release from custody within 48 hours from the date of this Order;

6. Petitioner's Motion to Expedite **[Doc. 2]** is **DENIED as moot**.

7. Any motion for attorney's fees and costs under the EAJA, 28 U.S.C. § 2412, shall be filed within 30 days of entry of judgment.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: November 4, 2026

s/Michael J. Davis
Michael J. Davis
United States District Court

[3] See Sandhu, 2026 WL 1146643, at *6.